```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
**LEXINGTON**

| | |
|---|---|
| GWEN S. JONES, | ) |
| | ) |
| | ) Civil Action No. 5:04-543-JMH |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KROGER, INC., | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| Defendant. | ) |

                    **       **       **       **       **

This matter is before the Court on Defendant's motion for summary judgment [Record No. 12]. Plaintiff has responded [Record No. 16], to which Defendant has replied [Record No. 18]. The matter having been fully briefed, and the Court being duly advised, this matter is ripe for decision.

**FACTUAL BACKGROUND**

Plaintiff began working for Defendant, Kroger, Inc., in March 1988, and throughout her employment with Defendant, Plaintiff held several positions. Plaintiff became delicatessen manager at Defendant's Richmond, Kentucky Kroger store (the "Richmond Store") in April 2003. As deli manager, Plaintiff's responsibilities included deciding what to sell in the deli, ordering products, and instructing deli clerks. As deli manager, Plaintiff was also responsible for monitoring the profitability of the deli. If a

1

deli product went out of date before it was sold, the loss of that product counted against the deli. In July 2003, after instructing two of her deli clerks on the proper way to wear the required hair net, Plaintiff, an African American, heard one of the clerks say that she was not going to do what the "black nigger" said to do. After Plaintiff told her managers what the deli clerk had said, the deli clerk was suspended. Defendant conducted an investigation, and as a result, Defendant terminated the deli clerk.

On November 14, 2003, there were approximately fourteen cases of uncooked chickens in the deli that were about to go out of date. Defendant has a policy regarding out-of-date merchandise. With the exception of bakery products, which can be donated with store permission, all out-of-date products must be disposed of and cannot be consumed, sold, or donated. One of Plaintiff's managers, Lewis Feese, instructed her to cook the chickens and sell them before they expired. Instructing her to follow the defendant's dating policy, Mr. Feese told her not to sell any out-of-date chickens. According to one of Plaintiff's managers, Justin Shackleford, he discovered two days later that Plaintiff had instructed her deli clerks to sell out-of-date chickens and hams. Plaintiff alleges that she thought all fourteen cases of chickens were sold on November 14, 2003 and that when she returned to work on November 15, 2003, the only chickens that remained in the cooler were still in date. On November 17, 2003, Plaintiff was reprimanded for

selling out-of-date chickens and hams and for failing to follow her supervisor's instructions.  Plaintiff was suspended pending the investigation of these incidents.  Defendant alleges that during its investigation of Plaintiff, it discovered that Plaintiff had violated its policy on several occasions by instructing her deli clerks to sell out-of-date products.  Plaintiff filed a grievance with her union, the United Food and Commercial Workers Union, protesting the suspension.  Plaintiff did not indicate in her grievance that she believed her suspension was based on her race. The parties met to discuss Plaintiff's grievance and Plaintiff's work history at the Richmond Store.  During her suspension, Defendant offered Plaintiff a position as a deli clerk at a different store, but Plaintiff rejected that offer.  Plaintiff was terminated by Defendant.  After Plaintiff was terminated, Thelma Haynes, an African-American employee, bid on and obtained the deli department head position at the Richmond Store.

In her complaint, Plaintiff characterizes her termination as "racially motivated" and alleges that (1) she was subject to disparate treatment in the terms and conditions of her employment in violation of KRS § 344.040(1), (2) Defendant retaliated against her in violation of KRS § 344.280 for complaining of a racially hostile work environment, and (3) she was wrongfully discharged.

## STANDARD OF REVIEW

A grant of summary judgment is proper "if the pleadings,

3

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Sixth Circuit has held that if the moving party meets its initial burden and the nonmoving party fails to respond, "its opportunity is waived and its case wagered." *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 405 (6th Cir. 1992). "Nothing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record."

4

*Id.* The trial court must still "carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the riposte for a silent party." *Id.* at 407. Therefore, if Defendant meets its burden in moving for summary judgment on the unopposed issues, then summary judgment would be proper. *Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir. 2000); *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991).

The Court's function is not to weigh the evidence, but to decide whether there are genuine issues for trial. *Anderson*, 477 U.S. at 249. The evidence should be construed in the light most favorable to the nonmoving party, in this case, the plaintiff, when deciding whether there is enough evidence to overcome summary judgment. *Id.* at 255; *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004).

## DISCUSSION

In its motion for summary judgment, Defendant argues that Plaintiff cannot establish a *prima facie* case for any of the claims in her complaint. In her response, Plaintiff did not respond to Defendant's motion as to Plaintiff's claims of race discrimination or wrongful discharge, but argued that Plaintiff has established a *prima facie* case as to her claims of retaliation and hostile work environment.

Plaintiff contends that she was subjected to racial slurs,

unwarranted reprimands by her supervisor, a hostile work environment, and termination of her position, all in violation of KRS § 344.040. In her complaint, Plaintiff alleges that she was subject to disparate treatment in the terms and conditions of her employment in violation of this statute.

Section 344.040(1) provides in pertinent part: "It is an unlawful practice for an employer . . . to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race . . . ." KRS § 344.040(1) (West 2005). The purpose of the Kentucky Civil Rights Act, which includes sections 344.040 and 344.280, is to "provide for execution within the state of the policies embodied in the Federal Civil Rights Act of 1964 as amended." *Id.* § 344.020(1)(a). Because the purposes of the Kentucky Civil Rights Act are similar to those in the federal act, Kentucky courts look to the federal act when construing the state act. *See Brooks v. Lexington-Fayette Urban County Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004); *Tiller v. Univ. of Ky.*, 55 S.W.3d 846, 848 (Ky. Ct. App. 2001).

**Hostile Work Environment**

To set forth a *prima facie* case of hostile work environment due to racial harassment, Plaintiff must establish the following:

> (1) she was a member of a protected group, (2) she was subjected to unwelcome harassment, (3) the harassment was based upon the employee's protected status, such as race . . . (4) the harassment affected a term, condition, or

>privilege of employment, and (5) the defendant knew or should have known about the harassing conduct but failed to take any corrective or preventive actions.

*Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 604-05 (6th Cir. 2002). Defendant contends that the incident described by Plaintiff in her deposition - that she was subjected to a racial slur by a co-employee - does not rise to the level of actionable harassment because it is not "severe and pervasive." Defendant argues that even if the incident was considered actionable harassment, Plaintiff has conceded that Defendant's response to this incident - suspending and ultimately terminating the deli clerk who made the statement - was satisfactory and that Defendant could not have done more to correct the problem.

"Discrimination so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment' violates Title VII." *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Plaintiff has not alleged any other incidents of racial harassment other than the incident with the deli clerk in July 2003. Although the plaintiff's co-employee's use of a racial slur is clearly offensive, the Court is in agreement with Defendant that this one racial insult during the seven months that Plaintiff worked as deli department head at the Richmond Store does not amount to actionable harassment. As the Supreme Court made clear in *Faragher v. City of Boca Raton*, 524

7

U.S. 775 (1998), "conduct must be extreme to amount to a change in the terms and conditions of employment," and Plaintiff's allegations, viewed in the light most favorable to Plaintiff, do not demonstrate conduct that was severe and pervasive enough to create a hostile work environment. *Id.* at 788.

Moreover, even if Plaintiff's claim of racial harassment set forth actionable harassment, Plaintiff has not established the final prong of a *prima facie* case of hostile work environment due to racial harassment: She has not demonstrated that Defendant failed to take any corrective or preventive actions upon learning of the incident. Plaintiff's own deposition reveals that this final prong has not been met. In her deposition, Plaintiff explained that after hearing the racial slur, she went to complain to her managers. It is undisputed that Plaintiff's managers suspended the deli clerk who made the disparaging remark, investigated the complaint, and finally terminated the deli clerk. Plaintiff admitted that there was nothing more that Defendant could have done to resolve her complaint.

A few final points as to Plaintiff's claim of a hostile work environment should be addressed. In her complaint, Plaintiff alleges that she "was subjected to racial slurs and innuendos by co-employees and management" and that she "complained to her supervisor about the racially hostile environment, but received no assistance to remedy the problem." (Compl. ¶¶ 10-11.) But in

8

Plaintiff's response to Defendant's motion for summary judgment, Plaintiff alleges that "[o]n one occasion [she] was subject to racial slurs by her subordinates." (Pl's Resp. 2.) In her deposition, Plaintiff explained that, other than that one incident with that one subordinate, she did not complain of any other slurs. (Pl's Dep. 148:9, May 16, 2005.) If Plaintiff had been subjected to multiple instances of racial harassment by her co-employees and her managers, she must, in order to sustain her burden, present "probative evidence" to support her claim. *Lansing Dairy*, 39 F.3d at 1347. Plaintiff has failed to present *any* evidence of any other instances of racial harassment by Defendant, and thus, she has not sustained her burden. Defendant, as previously discussed, has met its burden by showing that Plaintiff cannot establish a *prima facie* case of hostile work environment because Plaintiff has not demonstrated that she was subjected to actionable harassment.

In her complaint, Plaintiff bases her claim of hostile work environment on racial harassment. But in her response to Defendant's motion for summary judgment, Plaintiff alleges sexual harassment by her managers. (Pl's Resp 2.) The complaint must give a defendant "fair notice of the claim and its supporting facts." *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) (citing Fed. R. Civ. P. 8). To assert a new claim, Plaintiff should have amended her complaint in accordance with Federal Rule of Civil Procedure 15(a). *Id.* Once a case has

reached the summary judgment stage, a nonmoving party plaintiff cannot employ its response to the opposing party's summary judgment motion to raise a new legal claim for the first time.  *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (citing 10A Charles Alan Wright et al., Federal Practice and Procedure § 2723 (3d. ed. Supp. 2005)).  Plaintiff does not allege sexual harassment anywhere in her complaint, has not amended her complaint to include that claim, and cannot use her response to set forth a new legal claim.

**Retaliation**

Plaintiff claims that Defendant retaliated against her in violation of KRS § 344.280 because she complained of a racially hostile work environment.  Section 344.280 provides, in pertinent part: "It shall be unlawful for a person, or for two (2) or more persons to conspire:  (1) To retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint . . . under this chapter."

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show that (1) she was engaged in an activity protected by Title VII, (2) the activity was known to the defendant, (3) she was subjected to tangible employment action or was subjected to severe or pervasive retaliatory harassment by a supervisor, and (4) there was a causal link between the protected

activity and the adverse employment action. *Akers v. Alvey*, 338 F.3d 491, 497 (6th Cir. 2003); *see also Brooks*, 132 S.W.3d at 803 (evaluating state law claim of retaliation using the elements required for retaliation under Title VII). Once Plaintiff establishes a *prima facie* case, the burden of production shifts to Defendant to provide some legitimate non-discriminatory reason for the employment decision. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792-93 (6th Cir. 2000). Plaintiff must present evidence sufficient to raise an inference that the protected activity was the likely reason for the adverse action. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 461 (6th Cir. 2001).

Plaintiff has established (1) that she engaged in a protected activity by complaining of the use of a racial slur by her co-employee, (2) that Defendant knew of the activity, and (3) that she was subjected to tangible employment action when she was suspended and ultimately terminated by Defendant. This claim turns on whether Plaintiff can establish a causal link between complaining of the racial slur and her suspension and termination. To establish the causal connection required in the fourth prong, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). This burden is "minimal" and only requires Plaintiff to put forth some evidence

to demonstrate a causal connection.  *Id.* at 566.

Plaintiff characterizes Defendant's actions as conducting a "pattern of retaliation" in which Defendant reprimanded Plaintiff for violating a part-time employment policy in September 2003, for receiving a low deli score in October 2003, and for selling out-of-date chickens and hams and failing to follow her supervisor's instructions in November 2003.  Plaintiff states that this pattern ultimately led to her termination.

Viewing the evidence presented in the light most favorable to Plaintiff, the Court finds that she has not established a causal link between the protected activity and her suspension and termination.  The fact that Plaintiff was suspended and terminated approximately four months after she complained to Defendant of her co-employee's use of a derogatory, racist term is insufficient to establish a causal connection.  Plaintiff must provide additional evidence to create an inference that she would not have been suspended and terminated if she had not complained to her managers about her co-employee's racist remark.  Unlike the plaintiffs in *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363 (6th Cir. 2001) and *Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999), Plaintiff has not presented "other evidence of retaliatory conduct."  *Little*, 265 F.3d at 364.  Plaintiff attempts to characterize the September, October, and November 2003 reprimands as retaliatory conduct.  But unlike the plaintiff in *Moore*,

Plaintiff has failed to present evidence that creates the inference that Defendant reprimanded her in order to retaliate against her. In fact, as to the October 2003 reprimand for a low deli score, Plaintiff admits in her deposition that the score was low and that she later explained to her managers, who did not conduct the inspection that produced the score, why the score was low. (Pl's Dep. 107:13-109:21.) Although Plaintiff disputes her November 2003 reprimands, Defendant has provided affidavits from Wilma Young, a deli clerk at the Richmond Store, who stated that Plaintiff instructed her to sell out-of-date hams, and Lewis Feese, who stated that Plaintiff had instructed her deli clerks to violate Defendant's policy on out-of-date products. (Young Aff. 1; Feese Aff. 2.) Plaintiff has not presented sufficient evidence to create a genuine issue of material fact as to whether her suspension and termination were prompted by her complaining about her co-employee's use of a racial slur.

**Race Discrimination & Wrongful Discharge**

In her complaint, Plaintiff alleges that her employment was ultimately terminated solely due to her race. Plaintiff also alleges that she was wrongfully discharged in violation of the public policy of the Commonwealth of Kentucky. In her response to Defendant's motion for summary judgment, Plaintiff failed to respond to any of Defendant's arguments on these claims.

Federal Rule of Civil Procedure 56(e) states that

13

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see also Guarino*, 980 F.2d at 404-05 & n.5 (supporting the proposition that when a nonmoving party fails to respond to a summary judgment motion, "a court's reliance on the facts advanced by the movant is proper and sufficient"). The Court considers Defendant's motion for summary judgment on Plaintiff's claims of race discrimination and wrongful discharge as unopposed.

To set forth a *prima facie* case of a violation of the Kentucky Civil Rights Act, Plaintiff must prove the same elements as required for a *prima facie* case of discrimination under Title VII. *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1250 (6th Cir. 1995). Defendant argues that Plaintiff has not set forth a *prima facie* case of race discrimination because she cannot meet the final two prongs. To set forth a *prima facie* case of race discrimination, Plaintiff must establish the following: "(1) that [she] is a member of a protected group, (2) that [she] was subject to an adverse employment decision, (3) that [she] was qualified for the position, and (4) that [she] was replaced by a person outside of the protected class . . . or that similarly situated non-protected employees were treated more favorably." *Id.* at 1246.

14

Plaintiff has not presented any evidence (a) that she was qualified for the position or (b) that she was replaced by a person outside of her protected class or that similarly situated employees who were not members of a protected class were treated more favorably than her.  Citing to both the disciplinary write-ups in Plaintiff's performance record and Plaintiff's stated desire to step down as deli manager due to the pressures of the job, Defendant contends that Plaintiff cannot show that she was qualified for the deli manager position.  Defendant asserts, and Plaintiff concedes, that Defendant hired an African-American female to replace Plaintiff as head of the deli department at the Richmond Store.

Finally, Defendant argues that Plaintiff cannot establish a claim for wrongful discharge because her claim is preempted by statute.  The Kentucky Supreme Court has established the following limitations to the wrongful discharge exception to the at-will employment doctrine:

> (1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law. (2) That policy must be evidenced by a constitutional or statutory provision.  (3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

*Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985).  Both Title VII and the Kentucky Civil Rights Act declare that it is unlawful for an employer to discharge an employee because of that individual's race.  42 U.S.C. § 2000e-2(a)(1) (2005); KRS § 344.040.  These statutes also provide the remedy available to the aggrieved party.

15

In *Grzyb*, the Kentucky Supreme Court found that KRS § 344.040 would provide "the necessary underpinning" for a wrongful discharge suit based on sex discrimination, concluding that "[t]he statute not only creates the public policy but preempts the field of its application." *Grzyb*, 700 S.W.2d at 401. In *Banister v. Commonwealth of Kentucky*, No. Civ.A.5:04cv78R, 2005 WL 1214252 (W.D. Ky. May 20, 2005), the court, presuming that the plaintiff's wrongful discharge claim rested on facts similar to the plaintiff's claim of reverse race discrimination and age discrimination, concluded that because KRS § 344.040 "'both declares the unlawful act and specifies the civil remedy,'" the plaintiff was limited to a statutory remedy. *Id.* at *8 (quoting *Grzyb*, 700 S.W.2d at 401). Thus, in this case, presuming that Plaintiff's wrongful discharge claim rests on facts presented for her claim of race discrimination, the Court finds that she is limited to a statutory remedy for her claim, which, as previously stated, does not survive summary judgment. The Court finds that Defendant has met its burden in moving for summary judgment on these unopposed claims, and thus, summary judgment is proper.

## CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED** that Defendant's motion for summary judgment [Record No. 12] be, and the same hereby is, **GRANTED.**

This the 27th day of October, 2005.

16



Signed By:
*Joseph M. Hood*
United States District Judge

17